BOARD OF EDUCATION OF INDIAN PRAIRIE COMMUNITY UNIT SCHOOL DISTRICT NO. 204, DU PAGE AND WILL COUNTIES, Plaintiff-Appellant, v. INDIAN PRAIRIE EDUCATION ASSOCIATION, IEA/NEA, Defendant-Appellee.

Second District No. 85—0487

Opinion filed December 30, 1985.—Rehearing denied February 5, 1986.

Joseph A. Murphy and Keith A. Dorman, both of Ancel, Glink, Diamond, Murphy & Cope, P.C., of Chicago, for appellant.

Gerald C. Peterson and Maureen A. McNamara, both of Winston & Strawn, of Chicago, for appellee.

PRESIDING JUSTICE NASH delivered the opinion of the court:

Plaintiff, board of education of Indian Prairie Community Unit School District No. 204 (the board), appeals from an order of the circuit court which denied its motion to stay arbitration of a dispute with defendant, Indian Prairie Education Association (the association). The board contends that the dispute is not arbitrable under the terms of the collective bargaining agreement between the parties.

We must consider in this case the relationship between the collective bargaining agreement and a "memorandum of understanding" between the parties relating to class size and teacher assignments. The collective bargaining agreement contains a provision requiring binding arbitration of grievances which arise from it, as is required by section 10(c) of the Educational Labor Relations Act (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1710(c)). The memorandum of understanding

does not contain an arbitration provision and the parties draw different conclusions from that circumstance.

The collective bargaining agreement was by its terms made effective retroactively to the first teacher employment date of the 1984-85 school year and sets forth wages, hours and other terms of employment to which the parties had agreed. Article II of that agreement also reserved certain subjects to the control of the board, providing:

> "The Board, on behalf of the electors of the District, retains and reserves the ultimate responsibilities for proper management of the Indian Prairie Community Unit District 204 *** including but not limited to, the responsibilities for the right:
> * * *
> 4. To determine class schedules, the student attendance day, and the responsibilities and assignments of those in the bargaining unit.
> The exercise of the foregoing powers, rights, authorities, duties and responsibilities by the Board, the adoption of policies, rules, regulations and practices in furtherance thereof, *shall be limited only by law and the specific and express terms of this Agreement.*" (Emphasis added.)

In the printed pamphlet containing both the collective bargaining agreement and the memoranda of the understanding, the parties inserted a divider page between the two sections which states:

> "The attached Memos of Understanding were accomplished during the period of negotiations which led to a negotiated Agreement, with the understanding that the Memos of Understanding would not be in the Agreement. However, the parties have agreed to include the Memos of Understanding beyond the last official page of the Agreement only as a convenience to the Indian Prairie Education Association and the Indian Prairie Board of Education, with the original intent remaining permanent in that these Memos are not part of the negotiated Agreement."

The memorandum relating to class sizes was signed October 28, 1984, and states that a class size review committee will make written recommendations to the board superintendent by January 15 of each year. It also noted "current guidelines" for the committee, including that,

> "the number of different courses of instruction (preparation) shall not normally exceed three (3) for any one teacher. When it is necessary or desirable to assign a teacher more than three (3) courses of instruction, the teacher shall be given a second

preparation (planning) period in lieu of the supervision period if the assignment is more than one (1) semester each year."

On November 8, 1984, a dispute arose between Scott Rebman, a teacher at Waubonsee Valley High School, and Mr. Nordengren, an assistant principal, concerning whether Rebman had been properly assigned to manage a supervision period. Rebman contended that the class size memorandum allowed him a free period, but Nordengren considered that the memorandum had not yet been put into effect, and that it was insubordination for Rebman to refuse to oversee the supervision period. A letter to this effect was put into Rebman's personnel file.

The association filed a class grievance over the incident to which the board responded that the memorandum was not in effect and was not to be implemented until the following semester. On January 3, 1985, the association filed a demand for arbitration with the American Arbitration Association stating the issue to be whether or not the class size memorandum was in effect at the time the teacher was assigned to manage the supervision period. On February 7, 1985, the board filed a motion in the circuit court to stay arbitration pursuant to section 102(b) of the Uniform Arbitration Act (Ill. Rev. Stat. 1983, ch. 10, par. 102(b)). That motion was denied, and arbitration was ordered; however, enforcement of the order for arbitration was stayed by the trial court pending this interlocutory appeal.

The board's primary contention on appeal is that resolution of the dispute between Rebman and Nordengren rests entirely on an interpretation of the class size memorandum and the board has not agreed to arbitrate disputes relating to the memorandum of understanding. The board argues that binding arbitration is only applicable to "disputes concerning the administration or interpretation of the agreement" (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1710(c)), and a party can be compelled to submit to arbitration only if he has contracted to do so. *Board of Education v. Faculty Association of District 205* (1983), 120 Ill. App. 3d 930, 934, 458 N.E.2d 1017; *Lehman v. Eugene Matanky & Associates, Inc.* (1982), 107 Ill. App. 3d 985, 988, 438 N.E.2d 614.

The association contends that there exists a strong public policy or presumption favoring arbitration of labor disputes (*Teamsters Local 703 v. Kennicott Brothers Co.* (7th Cir. 1984), 725 F.2d 1088, 1091), and that all doubts are to be resolved in favor of arbitrability. (*Beer, Soft Drinks, Water, Carbonic Gas & Liquor Sales Drivers v. Vierk Corp.* (N.D. Ill. 1982), 549 F. Supp. 393, 398; *Electrical Workers Local 134 v. Chicago Zone of Marketing Operations of General*

*Electric Co.* (N.D. Ill. 1981), 535 F. Supp. 16, 20.) The association asserts that as the memorandum of understanding was not specifically excluded from arbitration within the collective bargaining agreement it is subject thereto. The association also argues that the board is asking this court to construe substantive portions of the collective bargaining agreement dealing with the power of the board to designate teaching assignments, and thus is seeking resolution of a dispute which is properly arbitrable. *Communications Workers of America v. Western Electric Co.* (7th Cir. 1984), 751 F.2d 203, 206-07.

 In addressing the association's arguments, we note initially that decisions of the Federal courts upon which it relies are not binding upon Illinois courts. (*Benjamin v. Board of Election Commissioners* (1984), 122 Ill. App. 3d 693, 697, 462 N.E.2d 626; *Kinney v. St. Paul Mercury Insurance Co.* (1983), 120 Ill. App. 3d 294, 300, 458 N.E.2d 79, *appeal denied* (1984), 99 Ill. 2d 529.) This is particularly true where the Federal courts have a different standard of review than do Illinois courts. Although arbitration is a favored method of settling disputes in Illinois (*First Condominium Development Co. v. Apex Construction & Engineering Corp.* (1984), 126 Ill. App. 3d 843, 846, 467 N.E.2d 932; *Board of Trustees v. Cook County College Teachers Union, Local 1600* (1981), 102 Ill. App. 3d 681, 683, 430 N.E.2d 249, *appeal denied* (1982), 91 Ill. 2d 557), and an arbitration agreement must be given as broad an interpretation as its language will allow (*Konicki v. Oak Brook Racquet Club, Inc.* (1982), 110 Ill. App. 3d 217, 224, 441 N.E.2d 1333), an arbitration agreement will not be extended by construction or implication (*Flood v. Country Mutual Insurance Co.* (1968), 41 Ill. 2d 91, 94, 242 N.E.2d 149; *Rentar Industries, Inc. v. Rubenstein* (1983), 118 Ill. App. 3d 1, 2, 454 N.E.2d 752). Arbitration remains a matter of contract, and a party cannot be required to submit to arbitration unless the agreement clearly so provides. *Board of Education v. Faculty Association of District 205* (1983), 120 Ill. App. 3d 930, 934, 458 N.E.2d 1017; *Allied Contracting Co. v. Bennett* (1982), 110 Ill. App. 3d 310, 313, 442 N.E.2d 326.

In this case, the parties agreed to arbitrate all grievances arising under the collective bargaining agreement. The grievance procedures therein provide that,

> "*Grievance* means any claim by a teacher or the Association that there has been a violation, misinterpretation, or misapplication of the terms of the Agreement"

and grievances are thus limited to misunderstandings arising from the language of the agreement itself. See *Silver Cross Hospital v. S.N. Nielsen Co.* (1972), 8 Ill. App. 3d 1000, 291 N.E.2d 247, *appeal denied*

(1973), 53 Ill. 2d 610; *Harrison F. Blades, Inc. v. Jarman Memorial Hospital Building Fund, Inc.* (1969), 109 Ill. App. 2d 224, 248 N.E.2d 289, *appeal denied* (1969), 42 Ill. 2d 583.

■ The only provision of the collective bargaining agreement relating to teacher scheduling is contained in its Article II which states that the board retains unilateral power to determine class schedules and teaching assignments, absent specific and express limitations elsewhere in the agreement. As defendant fails to point to any such limitations, it is apparent that an arbitrable dispute cannot rest on this provision alone. Article II establishes that the board, through its employee, Nordengren, had the right to assign Rebman to manage the supervision period and discipline him for his refusal. This exercise of the board's unilateral power to determine teaching assignments, in the absence of express limitations in the agreement, cannot be the basis of an arbitrable grievance.

The association contends, however, that the language of the class size memorandum of understanding, which offers guidelines for the assignment of teachers to courses of instruction and supervision, is a part of the agreement. If this view is correct, an arbitrable dispute would be raised, since the memorandum's guidelines, if in effect, arguably would limit the power of the board to establish teaching schedules.

■ In support of this contention, the association argues that the absence of a specific exclusion of the memoranda in the collective bargaining agreement necessarily means the parties intended to incorporate the memoranda into the agreement. The association cites no relevant authority for this proposition and it is apparent from its terms of exclusion the parties did not intend that the memorandum of understanding be considered an addendum to the collective bargaining agreement. The memoranda were placed beyond the last official page of the agreement and physically separated from the agreement by a "divider page." A statement on that page expressly declared that the memoranda were not in the agreement and were included only as a convenience to the parties. We cannot gainsay such a clear expression of the parties' intent (*Payne v. Coates-Miller, Inc.* (1982), 105 Ill. App. 3d 273, 275, 434 N.E.2d 306, *appeal denied* (1982), 91 Ill. 2d 572), as it is apparent that the class size memorandum is not a part of the collective bargaining agreement. For these reasons we conclude that the association's assertion that an arbitrable dispute exists must fail, since the only provisions of the collective bargaining agreement relating to teaching assignments reserve that authority to the board and thus present no basis for a grievance subject to arbitration.

██ We also note that the fact this court has considered the provisions of Article II of the collective bargaining agreement in relation to defendant's arguments does not in itself give rise to an arbitrable matter, as suggested by the association. Such a rule would defeat the purpose of all examinations into the arbitrability of disputes. See *Croom v. City of De Kalb* (1979), 71 Ill. App. 3d 370, 389 N.E.2d 647, *appeal denied* (1979), 79 Ill. 2d 610; *Board of Education v. Champaign Education Association* (1973), 15 Ill. App. 3d 335, 304 N.E.2d 138.

██ It is also apparent that the memorandum of understanding itself cannot be termed a "collective bargaining" agreement under section 10(a) of the Educational Labor Relations Act (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1710(a)) and thereby subject to the requirement of binding arbitration under section 10(c) of the Act (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1710(c)), inasmuch as the parties clearly did not intend the memorandum to be construed as such.

Accordingly, the order of the circuit court which denied the board's motion for a stay of arbitration is reversed and the cause is remanded with directions that it be granted.

Reversed and remanded.

SCHNAKE and STROUSE, JJ., concur.